UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
JOSE SANTOS,

                 Plaintiff,

     -against-


NEW YORK CITY DEPARTMENT
OF CORRECTION, et al.,


               Defendants.
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 2/25/10
```

08 Civ. 8790 (GBD)(THK)

**REPORT AND RECOMMENDATION**


**Pro Se**

**TO: HON. GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jose Santos ("Plaintiff"), proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, against Defendants the New York City Department of Correction ("DOC"), Correction Officer Brown ("Defendant Brown"), Correction Officer Arias ("Defendant Arias"), and Correction Officer Waiters ("Defendant Waiters") (collectively, "Defendants"), alleging that they violated his rights under the Eighth Amendment of the United States Constitution.

Presently before the Court is Defendants' Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. The motion was referred to this Court for a Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72.1(a) of the Local Civil Rules of the Southern District of New York. For the reasons that follow, the Court recommends that the

COPIES MAILED

2/25/10

motion be denied in part, and granted in part.

## BACKGROUND

The following facts, taken from Plaintiff's Amended Complaint, dated November 20, 2008 ("Am. Compl.") unless otherwise noted, are presumed to be true for the purposes of evaluating the instant motion:

The events at issue in this action took place at the Rikers Island prison facility, where Plaintiff was incarcerated during the relevant period. (See Am. Compl. ¶ 2.) On April 15, 2008, Plaintiff was standing in line, waiting to receive his dinner tray. (See id. ¶¶ 8,9.) He observed Defendant Brown "playing with another inmate in a sexual manner" in a dorm area that adjoined the area where food was being served. (See id. ¶ 9.) Defendant Brown became upset with the other inmate, and told him that she was "going to get him." (See id. ¶ 10.) Defendant Brown then picked up a fire extinguisher and chased the other inmate, who ran into the food-service area where Plaintiff was standing. (See id. ¶ 11.)

Defendant Brown sprayed the extinguisher at the fleeing inmate, but her aim was apparently inexact: the high-pressure stream of chemicals from the extinguisher hit Plaintiff in the face and left eye. (See id. ¶ 12.) When the chemicals hit Plaintiff, he immediately lost sight, and felt "burn[ing]" and "extreme pain" in his eye and on his skin. (See id.)

Plaintiff requested that Defendant Brown take him to a

2

hospital or clinic to be treated, and asked to see a captain. (See id. ¶ 13.) In response, Defendant Brown allegedly told him that she "did not care if [he] died," and ordered him to "get the fuck away from her." (See id. ¶ 14.) Plaintiff then asked Defendant Arias, who had witnessed Brown spraying the fire extinguisher, to send him to the clinic, but Arias told him that he was "just the Meal Relief Officer," and could not do anything to help Plaintiff with his burning eye and skin. (See id.) Plaintiff requested the same help from Defendant Waiters, but she too refused, telling Plaintiff that she did not want to get involved because Defendant Brown was the "A-Officer." (See id. ¶ 16.)

Plaintiff attempted to rinse off the chemicals himself by splashing water on his face and eyes. (See id.) After the officers again refused his request to go to the clinic for treatment, Plaintiff placed a call to his family, and told them what had happened. (See id. ¶ 17.) They immediately called the prison to inform them that Plaintiff was being denied medical care after being sprayed in the face and eye with chemicals. (See id.) An unnamed "female captain," who is not a defendant in this action, then arrived to investigate the incident, and sent Plaintiff to the clinic approximately two hours later. (See id. ¶ 18.)

The medical personnel at the prison's clinic spent four to five hours flushing the chemicals from Plaintiff's face and eye, and then sent him to a doctor for further examination and treatment. (See id. ¶¶ 19-20.) The doctor, an eye specialist,

3

took x-rays and gave Plaintiff medication.  (See id. ¶ 19.)  He
informed Plaintiff that he was lucky not to have lost an eye,
because the chemicals in the fire extinguisher, sprayed at such
high pressure, could have caused severe damage.  (See id. ¶ 20.)
The doctor found that the chemicals had caused partial vision loss,
and that Plaintiff's left eye was "extremely irritated."  (See id.)

## DISCUSSION

Plaintiff contends that his Eighth and Fourteenth Amendment
rights[1] were violated when Defendant Brown sprayed him with the
fire extinguisher, and when Defendants Brown, Arias, and Waiters
(the "Individual Defendants") refused to provide him with medical
care for the injuries he suffered.  He also claims that the
Individual Defendants and DOC "fostered an [u]nwritten [p]olicy in
which [f]emale [c]orrection [o]fficers are allowed to [p]lay
[s]exual [g]ames with [i]nmates," and that this policy led to the
injuries he suffered.  (See Am. Compl. ¶ 22.)

Defendants have moved to dismiss Plaintiff's claims, arguing,
among other things, that he has failed to state an Eighth Amendment
claim against Defendant Brown for spraying him with the fire
extinguisher, because he has not alleged that she maliciously or
sadistically intended to harm him (see Defendants' Memorandum of

---

[1]Because Plaintiff was a sentenced inmate in post-conviction
detention during the relevant period, his claims are properly
analyzed under the Eighth Amendment.  See Farmer v. Brennan, 511
U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994); Helling v. McKinney,
509 U.S. 25, 31, 113 S. Ct. 2475, 2480 (1993); Whitley v. Albers,
475 U.S. 312, 327, 106 S. Ct. 1078, 1088 (1986).

Law in Support of Motion to Dismiss, dated May 14, 2009 ("Def.'s Mem."), at 8-10); that he has failed to state an Eighth Amendment claim against any of the Individual Defendants for failure to provide him with medical care because he has not alleged a "serious medical need" to which they were deliberately indifferent (see id. at 11-15); that DOC is not a suable entity and therefore not a proper party to this action (see id. at 15-16); and that, to the extent Plaintiff's claims are construed to be against the City of New York rather than DOC, they are insufficient because Plaintiff has failed to adequately allege the existence of a city policy or custom responsible for the alleged violation of his constitutional rights (see id. at 16-18).

## I.    Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in [the] plaintiff's complaint, draw inferences from those allegations in the light most favorable to [the] plaintiff, and construe the complaint liberally." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (quoting Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)); see also Weixel v. Bd. of Educ., 287 F.3d 138, 145 (2d Cir. 2002). "This is especially true when dealing with pro se complaints alleging civil rights violations." Weixel, 287 F.3d at 146.

Yet, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

5

will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127
S. Ct. 1955, 1964-65 (2007) (internal quotation marks and citation
omitted).   "To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"   Ashcroft v.
Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949, (2009) (quoting
Twombly, 550 U.S. at 570, 127 S. Ct. at 1974).   A claim meets that
facial plausibility standard when "the plaintiff pleads factual
content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged."   Id. at 1949.

"[W]here the facts alleged in the challenged pleading are
ambiguous as to whether the conduct alleged is sufficient to
warrant a finding of culpability, the determination as to whether
a pleading articulates facts sufficient to state a claim upon which
relief may be granted [must] include[] an assessment as to whether
sufficient facts are alleged to make the plaintiff's allegations of
wrongdoing 'plausible.'"   Tierney v. Omnicom Group, Inc., No. 06
Civ. 14302 (LTS) (THK), 2007 WL 2012412, at *3 (S.D.N.Y. July 11,
2007); see also Ruotolo v. City of New York, 514 F.3d 184, 188 (2d
Cir. 2008) ("To survive a motion to dismiss, a complaint must plead
enough facts to state a claim to relief that is plausible on its
face.") (internal quotation marks and citation omitted).

II.   The Fire Extinguisher Incident

Plaintiff claims that Defendant Brown violated his Eighth
Amendment rights when she sprayed the fire extinguisher, hitting

6

him in the face and eye with a high-pressure stream of chemicals, thereby causing him "extreme pain," temporary blindness, and severe eye irritation.   Defendants argue that Plaintiff has failed to state the objective element of an Eighth Amendment claim because his injuries were insufficiently serious (<u>see</u> Defs.' Mem. at 8), and because spraying the fire extinguisher did not constitute a "use of force" (<u>see</u> <u>id.</u>).   Defendants further contend that Plaintiff cannot satisfy the subjective element of an Eighth Amendment violation because he alleges that Officer Brown intended to spray the other inmate, and did not "maliciously or sadistically" intend to harm Plaintiff. (<u>See</u> <u>id.</u> at 9.)

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5, 112 S. Ct. 995, 998 (1992).   In the prison context, it not only limits prison officials' authority to use force, <u>see</u> <u>Whitley</u>, 475 U.S. at 327, 106 S. Ct. at 1088, but also imposes an affirmative duty on prison officials to protect prisoners from harm and provide for their basic needs, <u>see</u> <u>Farmer</u>, 511 U.S. at 834-35, 114 S. Ct. at 1976-77; <u>Helling</u>, 509 U.S. at 31-32, 113 S. Ct. at 2480-81; <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04, 97 S. Ct. 285, 290-91 (1976). Thus, Eighth Amendment analysis in the prison context has primarily taken two paths: one as applied to cases alleging that prison officials used excessive force, and the other as applied to cases alleging

that prison officials have failed to provide adequate conditions of confinement.

Eighth Amendment claims have both a subjective component, which focuses on whether the defendant's state of mind was sufficiently culpable, that is, whether it was wanton, and an objective component, which considers whether an injury or condition was serious enough to warrant Eighth Amendment protection. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324-25 (1991); <u>see also</u> <u>Hudson</u>, 503 U.S. at 8, 112 S. Ct. at 1000.  The particular objective and subjective standard to be applied "depends upon the constraints facing the official." <u>Wilson</u>, 501 U.S. at 303, 111 S. Ct. at 2326.  Courts recognize that prison officials responding to a riot or other emergency must balance the need to maintain prison safety and security against the need to be restrained in their use of force.  Thus, in excessive-force claims, the inquiry focuses on whether the charged official used force in a good-faith attempt to maintain order, or maliciously and sadistically to cause harm.  <u>See</u> <u>id.</u> at 302, 111 S. Ct. at 2326. In conditions-of-confinement cases, no such competing concerns are present.  The charged official need only have been "deliberately indifferent" to a significant risk of harm to an inmate's health or safety. <u>See</u> <u>id.</u> at 303, 111 S. Ct. at 2327.

Defendants construe Plaintiff's claim against Defendant Brown as one alleging excessive force in violation of the Eighth

8

Amendment.   However, the claim does not fit easily into the excessive-force framework because, according to the Complaint, (1) Defendant Brown's use of the fire extinguisher had nothing to do with maintaining prison security, and (2) the object of her use of force was another inmate, not Plaintiff.   In the Court's view, the factual scenario alleged by Plaintiff is more comfortably analyzed as a claim that Officer Brown created an unconstitutionally dangerous condition of confinement – that she was deliberately indifferent to a serious risk that Plaintiff would be harmed when she gratuitously and indiscriminately sprayed a high-pressure stream of chemicals from the fire extinguisher.   See Hope v. Pelzer, 536 U.S. 730, 738, 122 S. Ct. 2508, 2514 (2002) (treating the handcuffing of an inmate to a hitching post, with the handcuffs above shoulder height and cutting into the inmate's wrists, after safety concerns had abated, as a prison condition that constituted deliberate indifference to the prisoner's health and safety); Farmer, 511 U.S. at 832-33, 114 S. Ct at 1976-77 (prison officials' duty to provide adequate conditions of confinement includes duty to take "reasonable measures to guarantee the safety of inmates"); Helling, 509 U.S. at 35, 113 S. Ct. at 2481 (exposure of inmate to environmental tobacco smoke could state Eighth Amendment claim for a condition of confinement that created a significant risk of harm); LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998) (knowingly exposing inmate to friable asbestos particles in the air

9

was sufficient to state Eighth Amendment claim of deliberate indifference to inmate health and safety); see also Varella v. Adams, No. 1CV036240WWLJOP, 2006 WL 279329, at *3 (E.D. Cal. Feb. 6, 2006) (where inmates were alleged to have been knowingly transported in a vehicle in a dangerous manner, and injuries ensued, the allegations were sufficient to state an Eighth Amendment claim of deliberate indifference to inmate safety).

However, Defendants have addressed the claim as an excessive-force claim, and there are a limited number of cases that employ excessive-force analysis when the plaintiff was not the force's intended object. Therefore, the Court will determine whether the Complaint states a claim for relief under the Eighth Amendment, applying both an excessive-force and a conditions-of-confinement analysis.

A. Dangerous Condition of Confinement

1. Legal Standard

Prison officials have an affirmative duty to provide for prisoners' basic needs, including their "reasonable safety." See Farmer, 511 U.S. at 837, 114 S. Ct. at 1979 (safety from attacks by other inmates); Helling, 509 U.S. at 32-33, 113 S. Ct. at 2480-81 (safety from dangers posed by secondhand smoke); Wilson, 501 U.S. at 303-05, 111 S. Ct. at 2327-28 (safety from dangerous conditions of confinement, including "overcrowding, excessive noise, insufficient locker storage space, inadequate heating and cooling,

10

improper ventilation, unclean and inadequate restrooms, unsanitary dining facilities and food preparation, and housing with mentally and physically ill inmates"). "The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., . . . reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 200, 109 S. Ct. 998, 1005 (1989).   Such wanton pain and suffering is "simply not part of the penalty that criminal offenders pay for their offenses against society." United States v. Walsh, 194 F.3d 37, 49 (2d Cir. 1999) (citing Boddie v. Schneider, 105 F.3d 857, 861 (2d Cir. 1997)).

To satisfy the objective element of a conditions-of-confinement claim, a plaintiff must allege that the challenged activity or condition posed "a substantial risk of serious harm." See Hope, 536 U.S. at 738, 122 S. Ct. at 2514; Farmer, 511 U.S. at 833-34, 114 S. Ct. at 1976-77; Helling, 509 U.S. at 35, 113 S. Ct. at 2481.   Mere discomfort that does not pose a serious risk to health or safety will not satisfy this standard. See Trammel v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of mattress, toiletries, and nearly all clothing for approximately two weeks - while perhaps uncomfortable - did not pose serious risk to inmate

health and safety).

The subjective analysis focuses on whether the charged official was "deliberately indifferent" to a risk of serious harm to a prisoner's health or safety. See Hope, 536 U.S. at 737-38, 122 S. Ct. at 2514-15; Trammel, 338 F.3d at 162-63; Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002). Deliberate indifference entails "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, the charged official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Phelps, 308 F.3d at 186 (quoting Farmer, 511 U.S. at 837, 114 S. Ct. at 1979). Essentially, a defendant must, at a minimum, act with reckless disregard of a serious risk of harm. "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). However, "[a] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Phelps, 308 F.3d at 186 (quoting Farmer, 511 U.S. at 842, 114 S. Ct. at 1981).

2. Application

The risk of harm to Plaintiff's health and safety posed by Defendant Brown's alleged conduct was not so insignificant that, as

a matter of law, it could not satisfy the objective prong of an Eighth Amendment violation. As set forth in the Amended Complaint, as a result of Defendant Brown's actions, Plaintiff suffered "extreme pain," partial temporary blindness, and severe eye irritation. (See Am. Compl. ¶¶ 12, 16, 20.) His injuries required hours of medical care, as well as medication. (See id. ¶¶ 19-20.) The doctor who treated Plaintiff is alleged to have informed him that he had been lucky not to lose the eye completely, due to the corrosive nature of the chemicals and the high pressure at which they were sprayed. (See id. ¶ 20.) A dangerous prison condition that leads to extreme pain, temporary eye damage, and the potential for loss of sight, is sufficiently serious to implicate the Eighth Amendment. See, e.g., Brock v. Wright, 315 F.3d 158, 163 (2d Cir. 2003) (a painful facial scar that was source of chronic pain was sufficiently serious to meet the objective element of an Eighth Amendment violation; "We do not . . . require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one."); Hemmings v. Gorczyk, 134 F.3d 104, 106-09 (2d Cir. 1998) (a torn achilles tendon that caused swelling and pain satisfied objective prong of Eighth Amendment violation); Williams v. Smith, No. 02 Civ. 4338 (DLC), 2009 WL 2431948, at *8-10 (S.D.N.Y. Aug. 10, 2009) (severe back pain satisfied objective prong). Indeed, eye impairments that

13

have been found sufficiently serious to satisfy the objective element of an Eighth Amendment violation for denial of medical care include the deprivation of proper eyeglasses, causing visual impairments such as double vision and the loss of depth perception, see Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996); poor lighting, causing eye strain and fatigue, see Amaker v. Goord, No. 98 Civ. 3634 (JGK), 1999 WL 511990, at *7 (S.D.N.Y. July 20, 1999); a delay in receiving eyeglasses, causing eye strain and fatigue, see Myrie v. Calvo, 591 F. Supp. 2d 620, 627 (S.D.N.Y. 2008); and an infection causing the loss of vision in the right eye and damage to the left, see Hines v. Gandham, No. 9:08 CV 553 (GLS)(DLH), 2009 WL 537541, at *7 (N.D.N.Y. Mar. 3, 2009).  If these conditions are serious enough to impose an affirmative duty on prison officials to provide sufficient medical care to prevent and treat them, there can be little argument that they are not also serious enough to implicate the Eighth Amendment when prison officials recklessly cause them through their own intentional conduct.   Thus, Plaintiff's pain and eye injury are sufficient to satisfy the objective element of his claim.[2]

---

[2] Defendants argue that Plaintiff's medical records indicate that he sustained only eye irritation, redness, and conjunctivitis as a result of the incident, and, therefore, he cannot satisfy the objective prong of an Eighth Amendment claim. (See Defs.' Mem. at 8.)   The Court need not determine whether such consequences would be serious enough to give rise to an Eighth Amendment violation because the evidence in Plaintiff's medical records is not relevant to a Rule 12(b)(6) motion to dismiss.   Here, the Court must accept the allegations of the Complaint as true, and matters outside of the pleadings cannot be

Plaintiff has also alleged sufficient facts to satisfy the subjective element of his claim. A reasonable fact-finder could conclude that it is obvious that spraying high-pressure chemicals at eye-level, in the presence of a group of people, poses a serious risk of harm, and that Defendant Brown therefore acted with reckless disregard to the safety of Plaintiff and others when she did so. See Phelps, 308 F.3d at 186 (citing Farmer, 511 U.S. at 837, 114 S. Ct. at 1979).

Therefore, Plaintiff has adequately pled a claim that Defendant Brown violated his Eighth Amendment rights when she was deliberately indifferent to the significant risk that indiscriminately spraying the fire extinguisher would seriously injure Plaintiff. While the facts may ultimately demonstrate otherwise, at this early stage in this proceeding the claim does not merit dismissal.

B. Use of Excessive Force

1. Legal Standard

In excessive-force cases, the Eighth Amendment inquiry "turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wright v. Goord, 554 F.3d 255, 269 (2d Cir. 2009); see also Wilson, 501 U.S. at 302, 111 S. Ct. at 2326; Blyden, 186 F.3d at 262. The

---

considered. This will not be the case if a motion for summary judgment is brought after the parties have an opportunity for pretrial discovery.

objective element of an excessive-force claim requires only a showing that the force used was more than de minimis, see Wright, 554 F.3d at 269; Walsh, 194 F.3d at 48, because when force is used maliciously and sadistically to cause harm, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." Hudson, 503 U.S. at 9, 112 S. Ct. at 1000; accord Wright, 554 F.3d at 268-69. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights . . . . Indeed, not even every malevolent touch by a prison guard gives rise to a federal cause of action." Boddie, 105 F.3d at 862 (internal quotation marks and citations omitted). However, there is no need to demonstrate that a serious injury resulted. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 112 S. Ct. at 1000; see also Wilkins v. Gaddy, --- S. Ct. ---, No. 08-10914, 2010 WL 596513, at *2-3 (Feb. 22, 2010)(per curiam).[3]

The subjective inquiry in excessive-force cases turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Blyden, 186 F.3d at 262 (quoting Hudson, 503 U.S. at 7, 113 S. Ct.

---

[3] Nevertheless, the absence of serious injury is relevant to the inquiry into whether the force used was de minimis, even though it does not end it. See Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (citing Hudson, 503 U.S. at 7, 112 S. Ct. at 999); see also Wilkins, 2010 WL 596513, at *2-3.

16

at 999). The use of the terms "maliciously and sadistically" is "not a limit on liability for uses of force that are otherwise in bad faith," but rather "only a characterization of all 'bad faith' uses of force." Id. at 263 (citing Hudson, 503 U.S. at 7, 112 S. Ct. at 999). Therefore, the subjective inquiry considers whether the charged official used force in service of a legitimate penological objective. "Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Boddie, 105 F.3d at 861.

   2. Application

   It is not possible to conclude, at this early stage, that Defendant Brown's actions involved merely the de minimis use of force. As alleged, Brown sprayed a high-pressure stream of chemicals into Plaintiff's face and eye. The combination of the chemicals and the pressure with which they were sprayed was sufficient to cause extreme pain, partial blindness, and may even have risked destroying Plaintiff's eye. That use of force is significant enough to implicate the Constitution. See Beckford v. Portuondo, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (plaintiff's allegations that he suffered minor injuries when prison guards sprayed him in the face and chest with a fire extinguisher were sufficiently serious to satisfy objective element of Eighth Amendment excessive-force claim); cf. Wright, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could

17

reasonably, if credited, allow a rational factfinder to find that
corrections officers used force maliciously and sadistically, our
Court has reversed summary dismissals of Eighth Amendment claims of
excessive force even where the plaintiff's evidence of injury was
slight and the proof of excessive force was weak.").   Therefore,
Plaintiff satisfies the objective element of an Eighth Amendment
excessive force claim.

It is the subjective prong that, at least superficially, poses
the greatest obstacle to Plaintiff's excessive-force claim because,
even as alleged in the Complaint, Defendant Brown did not
maliciously or sadistically spray the extinguisher at *Plaintiff* in
order to cause *him* harm.   Characterizing the issue in that way,
however, does not conclude the inquiry.

The threshold question in the subjective prong of a use-of-
force claim is whether force was used in service of a legitimate
penological interest.   "Infliction of pain that is totally without
penological justification is per se malicious." Ruffino v. Gomez,
No. 3:05 CV 1209 (JCH), 2006 WL 3248570, at *6 (D. Conn. Nov. 8,
2006) (citing Hope, 536 U.S. at 737, 122 S. Ct. at 2514) (internal
quotation marks omitted).   No legitimate penological purpose can be
inferred from Plaintiff's description of Defendant Brown's conduct.
When she sprayed the fire extinguisher, there was no fire to be
extinguished, and no other apparent security threat.   Rather, as
alleged, after sexual play, she was angry at an inmate and wanted
to punish him.   (See Am. Compl. ¶¶ 9-11.)   See Boddie, 105 F.3d at

18

861 (sexual abuse of inmates serves "no legitimate law enforcement or penological purpose"); Beckford, 151 F. Supp. 2d at 216 ("when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs").

Thus, Plaintiff has satisfied his burden of pleading that Defendant Brown acted in bad faith, because she had no legitimate reason to spray the fire extinguisher at Plaintiff or any other inmate. See Santiago v. Campisi, 91 F. Supp. 2d 665, 673 (S.D.N.Y. 2000) ("plaintiff has satisfied his burden on [the subjective] element by merely pleading a scenario in which the use of force could not have been in good faith.").

Defendants argue that Defendant Brown cannot be liable for an Eighth Amendment violation because she did not intend to use force against Plaintiff, and therefore cannot have acted with a sufficiently culpable state of mind. However, the Second Circuit has noted that it is inappropriate to impose a "limit on liability for force that is otherwise in bad faith." Blyden, 186 F.3d at 263. While the Second Circuit has not addressed the specific circumstance of one inmate being injured by bad-faith force directed at another, the Ninth Circuit analyzed that exact scenario in Robins v. Meacham, 60 F.3d 1436, 1441 (9th Cir. 1995), and squarely rejected the argument that Defendants make here.

Robins concerned an incident in which prison officials fired

19

a round of bird shot at an inmate who refused an order to "lock up." Several pellets of bird shot went under the cell door of the bystander plaintiff, injuring his foot. He brought an Eighth Amendment suit against the officers, who argued that they could not be held liable for his injuries, because they had intended to use force only against the non-compliant inmate. The Ninth Circuit disagreed, finding that "[t]he standard of wantonness that a plaintiff must establish is not that the defendants acted *towards him* maliciously and sadistically for the purpose of causing *him* harm," but rather that "the defendants applied force maliciously and sadistically for the very purpose of causing harm - that is *any* harm." See id. (emphasis in original).

When a corrections official gratuitously uses force that is "not applied in a good-faith effort to maintain or restore discipline," it is by definition wanton and unconstitutional. Blyden, 186 F.3d at 263. Defendants fail to explain why such force would cease to be unconstitutional when it injures inmates *in addition to* the official's intended target. Of course, had there been a security justification for Defendant Brown's employing a fire extinguisher against the other inmate, then the use of that force would not have been malicious and wanton, and any consequential injury to Plaintiff could reasonably be viewed as mere negligence. See Bolden v. O'Leary, No. 89 C 6230, 1995 WL 340961, at *5 (N.D. Ill. June 2, 1995) (where correctional officer

used a chemical agent on an inmate who was approaching him in a threatening manner, in the midst of other inmates refusing to obey direct orders, the plaintiff-inmate's inadvertent exposure to the chemical agent was not actionable under Section 1983).   That, however, is not what has been alleged in the Complaint.

The Court recognizes that the facts alleged by Plaintiff do not fit comfortably into the elements of an Eighth Amendment excessive-force claim, because it does not appear that Defendant Brown intended to injure Plaintiff.   However, when a correctional official intentionally and wantonly uses force without justification against one inmate, and thereby creates a substantial risk of harm and actual injury to other inmates, it cannot be the case that she is free of constitutional liability to the inmates she injures just because they were not her intended targets. Whether Defendant Brown's conduct is viewed as the wanton and bad faith use of excessive force, or as deliberate indifference to inmate health and safety, the allegations of the Complaint are sufficient to state a plausible violation of the Eighth Amendment.

### III. Denial of Medical Care

Plaintiff has alleged that Defendants Brown, Arias, and Waiters were deliberately indifferent to his medical needs when they refused to send him to the prison's clinic immediately after the fire extinguisher incident.   Plaintiff claims that Defendant Brown refused his requests for medical care, telling him to "get the fuck away from her" and that she "did not care if [he] died."

21

(<u>See</u> Am. Compl. ¶ 14.)  When Plaintiff made the same request of Defendant Arias, he responded that he could not do anything to help, because he was "just the Meal Relief Officer." (<u>See</u> <u>id.</u>) Defendant Waiters also refused Plaintiff's request for medical care, telling him that she "was not going to get involved because C.O. Brown was the A-Officer." (<u>See</u> <u>id.</u> ¶ 16.)

Defendants contend that Plaintiff's injuries were not serious enough to warrant medical attention, and this claim should therefore be dismissed.

A. <u>Legal Standard</u>

The objective element of an Eighth Amendment claim arising out of the denial of medical care focuses on whether the alleged deprivation of adequate medical care was "sufficiently serious." <u>See</u> <u>Salahuddin</u>, 467 F.3d at 279 (quoting <u>Farmer</u>, 511 U.S. at 834, 114 S. Ct. at 1977).  Determining whether the care a prisoner received meets the objective standard requires an additional two-part inquiry.  <u>See</u> <u>id.</u>  First, courts focus on the adequacy of the care.  <u>See</u> <u>id.</u>  Under this part of the analysis, "prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause." <u>Id.</u> at 279-80 (quoting <u>Farmer</u>, 511 U.S. at 845, 114 S. Ct. at 1983). Second, courts focus on the seriousness of a plaintiff's medical needs.  <u>See</u> <u>id.</u> at 280. "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the

22

condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'"   Id. (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)); see also Brock, 315 F.3d at 162.  The inquiry into the seriousness of a medical condition depends on the deprivation of care that the prisoner has alleged.  If the prisoner has alleged that the prison failed to treat his condition at all, then courts will consider the severity of the medical condition itself.  However, if the alleged violation is a disruption or delay in treatment, then "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."  Smith v. Carpenter, 316 F.3d 178, 185-86 (2d Cir. 2003); see also Salahuddin, 467 F.3d at 280.

The subjective element of an Eighth Amendment claim for denial of medical care focuses on whether the defendant acted with "deliberate indifference" to the plaintiff's medical needs.  As in conditions-of-confinement cases, the charged official must "act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Salahuddin, 467 F.3d at 280 (citing Farmer 511 U.S. at 836-37, 114 S. Ct. at 1978); see also Wilson, 501 U.S. at 303, 111 S. Ct. at 2327 ("Whether one characterizes the treatment received by the prisoner as inhumane conditions of confinement, failure to attend to his medical needs, or a

combination of both, it is appropriate to apply the 'deliberate indifference' standard.") (citations omitted).

    B. <u>Application</u>

Plaintiff has adequately pled the objective element of his claim.  Turning first to the adequacy of care, Plaintiff has alleged that Defendants did not respond reasonably to his request for medical care.  The  Eighth  Amendment "does not require empathy." <u>Ramos v. Artuz</u>, No. 00 Civ. 149 (LTS)(HBP), 2003 WL 342347, at *9 (S.D.N.Y. Feb. 14, 2003); <u>see also</u> <u>Verley v. Goord</u>, No. 02 Civ. 1182 (PKC)(DCF), 2004 WL 526740, at *13 (S.D.N.Y. Jan. 23, 2004) (Report and Recommendation).  Nor does the mere fact that an official was hostile or verbally abusive to an inmate seeking care give rise to an Eighth Amendment claim.  <u>See</u> <u>Verley</u>, 2004 WL 526790 at *13; <u>Johnson v. Bendheim</u>, No. 00 Civ. 720 (JSR)(KNF), 2001 WL 799569, at *6 (S.D.N.Y. July 13, 2001).  What is required, however, is that prison officials provide reasonable care.  <u>See</u> <u>Salahuddin</u>, 467 F. 3d at 279-80.  Here, Plaintiff contends that Defendants refused to provide him  with *any* medical care, and, as alleged, they did not make that decision on the basis of their reasonable judgment about Plaintiff's medical needs.

As to the seriousness of Plaintiff's medical condition, he alleges that he was deprived of care for a period of several hours, until, at the behest of his family, a captain eventually arrived and referred him to the prison's medical clinic.  (<u>See</u> Am. Compl. ¶ 18.) Plaintiff does not claim that the treatment he received from

the medical staff at the clinic was inadequate. (See Am. Compl. ¶¶ 18-20.)   Therefore, the deprivation at issue is the delay in treatment, and it is the seriousness of the risk posed by that delay that is relevant to Plaintiff's Eighth Amendment claim. See Smith, 316 F.3d at 186.

At this early stage, drawing all inferences in the Amended Complaint in Plaintiff's favor, the Court cannot conclude that the delay in Plaintiff's medical care was not serious. Considering the three relevant criteria – (1) whether a reasonable doctor or patient would find the condition important and worthy of comment, (2) whether the condition "significantly affects an individual's daily activities," and (3) whether it causes "chronic and substantial pain" – Plaintiff's allegations clearly satisfy (1) and (3), and plausibly fulfill (2). See Salahuddin, 467 F.3d at 279-80. The Amended Complaint alleges that Plaintiff was in "extreme pain," and the prison's medical staff clearly thought that his condition was worthy of attention, as evidenced by the x-ray diagnostics, medication, referral to an eye specialist, and hours of medical care they provided once he was eventually brought to the clinic. Plaintiff also alleges the sort of condition that might plausibly "significantly affect" his daily activities: the temporary loss of sight in his left eye.

Defendants argue that Plaintiff was not actually in severe pain, and that his eye was merely "red and irritated," but those sorts of factual disputes are not appropriately considered on a

25

motion to dismiss,[4] where the Court must "take as true all of the allegations contained in plaintiff['s] complaint and draw all inferences in favor of the plaintiff[]." Weixel, 287 F.3d at 145. Therefore, Plaintiff has adequately pleaded the objective element of his Eighth Amendment claim.

Plaintiff also has adequately pled the subjective element of his claim. He has alleged that the Individual Defendants were aware that he had been sprayed in the face and eye with chemicals from the fire extinguisher, and that he was in pain. (See Am. Compl. ¶¶ 12-16.) Moreover, he made a direct request to each of them for medical attention. (See id.) Taken together, those

---

[4] Defendants have cited several cases in support of their argument that Plaintiff's medical needs were not serious, but all were decided at the summary judgment stage, on the basis of pretrial discovery, which is not appropriate at the motion to dismiss stage. See Edmonds v. Greiner, No. 99 Civ. 1681(KNF), 2002 WL 368446, at *12 (S.D.N.Y. Mar. 7, 2002) (granting summary judgment to defendants on plaintiff's claim that he was denied medical care overnight after prison guard threw substance in his eyes, and finding that prison guard acted reasonably, relying on evidence that guard had contacted medical staff and informed them of the problem with plaintiff's eyes and been told to have plaintiff flush his own eyes with water and come for an examination the following morning); Pressley v. Green, No. 02 Civ. 5261 (NRB), 2004 WL 2978279, at *4 (S.D.N.Y. Dec. 21, 2004) (granting summary judgment, relying on medical records and doctor's affidavit to determine that a delay of several hours in treating plaintiff's first and second degree burns was not serious, and that there was insufficient evidence that plaintiff had been in severe pain); Smart v. City of New York, No. 08 Civ. 2203 (HB), 2009 WL 862281, at *7 (S.D.N.Y. Apr. 1, 2009) (granting summary judgment, relying on deposition testimony to find that plaintiff, who had been sprayed in the eyes with pepper spray, did not have a serious medical need, because plaintiff's eyes were flushed by a nurse after he had seen a doctor, and doctor would have flushed the eyes himself if condition had been urgent).

allegations are sufficient to state a plausible claim that the Individual Defendants were deliberately indifferent to a substantial risk that Plaintiff would suffer serious harm. Therefore, Plaintiff has adequately pled a denial of medical care that violates the Eighth Amendment.

## IV.  Claims Against DOC

It is well established that New York City agencies, such as the Department of Correction, are not suable entities. See N.Y. City Charter Ch. 17 § 396 ("[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of agency, except where otherwise provided by law"); see also Marcello v. Dep't of Corr., No. 07 Civ. 9665 (NRB), 2008 WL 2951917, at *4 (S.D.N.Y. July 30, 2008) (under the New York City Charter, agencies of the City are immune from suit); Green v. City of N.Y. Dep't of Corr., No. 06 Civ. 4978 (LTS)(KNF), 2008 WL 2485402, at *4 (S.D.N.Y. June 19, 2008) (dismissing the New York City Department of Correction as a defendant because it is a non-suable entity); Echevarria v. Dep't of Corr. Servs. of N.Y. City, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999) (holding that the New York City Department of Correction is not a suable entity).[5]  Therefore, I recommend

---

[5] Plaintiff claims that the fire extinguisher incident was the result of "an unwritten policy in which female correction officers are allowed to play sexual games with inmates." (See Am. Compl. ¶ 22.)  However, he alleges only a single incident involving a single officer, and does not plausibly allege that the "policy" he references was the proximate cause of his injury. While municipal governments can be liable under § 1983 for

that the claims against DOC be dismissed.

## CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion to dismiss be denied with respect to the claims against the Individual Defendants, and granted as to the claims against DOC.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable George B. Daniels, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Daniels. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

---

constitutional violations that are the result of a governmental custom or policy, whether written or unwritten, see Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978), Plaintiff's claim is implausible on its face. It would therefore be inappropriate to allow Plaintiff to amend his Complaint to add the City of New York as a Defendant in place of DOC.

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: February 25, 2010
       New York, New York

29